IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff*, | ) ) ) ) |
| v. | ) ) |
| CORBIN BURTON, | ) No. 4:23-CR-00318-JMD ) |
| *Defendant*. | ) ) ) ) ) |

**DETENTION OPINION**

  The Court issues this opinion to explain a matter about detaining criminals that has split courts, including judges on this Court. The Eighth Circuit is one of the few circuits that has not expressly weighed in. Guidance would be welcome.

  Criminal conviction does not trigger immediate detention for every federal offender. 18 U.S.C. § 3143. A convicted felon, ultimately bound for prison, can sometimes remain free for months—for example, while awaiting sentencing. Not wanting highly serious offenders to remain free, Congress required federal courts to detain offenders immediately upon conviction of certain crimes, including crimes involving violence, terrorism, exploitation of children, or drug trafficking. §§ 3142(f)(1), 3143(a)(2). There are two exceptions. The first applies if the Federal Government recommends no prison sentence—very rare for these serious crimes—and the district court determines by clear and convincing evidence that the person is not likely to flee or pose a danger. § 3143(a)(2). The second applies if "the judicial officer" determines that "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." § 3145(c).

1

For this second exception, courts are split on who decides whether "exceptional reasons" for release exist: district judges or appellate judges. The Eighth Circuit has not expressly resolved the issue. *See United States v. Hamm*, No. 4:19-cr-00613 SRC, 2021 WL 1669973, at *3 (E.D. Mo. Apr. 27, 2021) (describing Eighth Circuit decisions). I am inclined to agree with "the majority of circuits," which hold that district judges make this determination. *United States v. Meister*, 744 F.3d 1236, 1238 (11th Cir. 2013) (per curiam). But in a well-reasoned opinion, another judge on this Court adopted the minority view: only appellate judges can decide this question about detention. *Hamm*, 2021 WL 1669973, at *4, *8.

Guidance from the Eighth Circuit would be welcome. The question might appear mostly academic because giving bail to a defendant convicted of a serious crime is almost never warranted; by definition, "*exceptional* reasons" rarely exist. *E.g.*, *United States v. Larue*, 478 F.3d 924, 926 (8th Cir. 2007) (per curiam) ("exceptional" means "clearly out of the ordinary, uncommon, or rare"). Still, somebody is required by federal law to determine whether a defendant has identified exceptional reasons justifying release. And it affects judicial resources when it is unclear which judge must do so. If *Hamm* is wrong, then some district judges will fail to address questions properly before them, and appellate courts may need to address those questions in response to emergency motions and without the benefit of evidentiary hearings. *See, e.g.*, *Meister*, 177 F.3d at 1237 (resolving an emergency appeal in between conviction and sentencing after having to remand for a hearing); *Larue*, 478 F.3d at 924 (granting "an expedited appeal" in a case where a district judge released a convicted felon). But if *Hamm* is right and I am wrong, then district judges are needlessly and improperly wasting resources hearing arguments they have no power to resolve, and criminal

2

defendants are poorly served by not knowing which forum is proper for their arguments. Either way, all district judges would benefit from appellate clarity.

Central to the disagreement among courts is whether to apply the statutory definition of "judicial officer." The detention statute says that when a person is convicted of certain crimes, that person must be detained unless "the judicial officer" concludes that "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." § 3145(c). All agree that Congress, in a neighboring provision, defined "judicial officer" to include district court judges, "unless otherwise indicated." § 3156(a)(1); *see also, e.g.*, *Hamm*, 2021 WL 1669973, at \*3. But a minority of courts believe that "judicial officer" in § 3145(c) means only appellate judges.

## I.

*Hamm* adopts that minority view after assessing several canons of interpretation. First, titles can illustrate textual meaning. *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (2012); William N. Eskridge Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 103 (2016). The title of subsection (c)—the relevant detention provision—focuses on appeals: "Appeal From a Release or Detention Order." § 3145(c).

Second, the text of subsection (c) can be read to focus on appellate courts. Subsections (a) and (b) address a district judge's review of a detention or release order issued by a magistrate judge or a district judge who sits outside the district where the indictment was issued. Subsection (c), in turn, contemplates "[a]n *appeal* from a release or detention order"

to an appellate court (emphasis added). *See also Hamm*, 2021 WL 1669973, at *4–*6. And it is that subsection where the text at issue here appears.

Third, *Hamm* argues that the statutory definition of "judicial officer" does not apply because of Federal Rule of Criminal Procedure 46(c) and Federal Rule of Appellate Procedure 9(c). Invoking the familiar concept of *in pari materia*—laws addressing the same subject should be interpreted together—*Hamm* argues that these rules (when combined with other canons) make clear that "judicial officer" in § 3145(c) includes only appellate judges. Rule 46(c) tells *district* courts that "[t]he provisions of 18 U.S.C. § *3143* govern release pending sentencing or appeal" (emphasis added). The rule is silent about § 3145. Rule 9(c), in contrast, tells *appellate* courts to "make [a] decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, *and* 3145(c)" (emphasis added). In other words, only the federal appellate rules expressly cite the detention provision at issue here. *Hamm* says the express inclusion of § 3145(c) in the rule governing appellate review, and not in the rule governing district courts, tips the scales against following the statutory definition.

## II.

I disagree. Although I accept that there are good arguments in both directions, *Hamm*, 2021 WL 1669973, at *7 (calling the issue a "very close call" when looking at the Mandatory Detention Act alone), I disagree that any of the text is strong enough to dislodge the statutory definition of "judicial officer."

First, like *Hamm*, I place great weight on Congress's decision to define "judicial officer" expressly. Everybody agrees that the definition includes district judges. So any argument against applying that definition faces an uphill battle. Although statutory context sometimes can overcome an express definition, "[i]t is *very rare* that a defined meaning can

4

be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is *virtually conclusive*." Scalia & Garner, *supra*, at 228 (emphasis added). To be sure, the definition itself contemplates that context may "otherwise indicate[]" a meaning of "judicial officer" different from the express definition. § 3156(a)(1). That makes no difference. That text simply makes explicit what would have been implicit: the definition applies by default unless displaced by other text. *See* Scalia & Garner, *supra*, at 226.

Second, the courts aligning with the minority view have tended to rely on canons that are relatively weak. *Hamm*, for example, identifies the "title and headings" canon. But reliance on the title of a provision can be "precarious," *see id.* at 221, and may be done "only when it sheds light on some ambiguous word or phrase," *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (cleaned up); *see also* Scalia & Garner, *supra*, at 222 (emphasizing that "a title or heading should never be allowed to override the plain words of a text"); Eskridge, *supra*, at 105 (cautioning that "federal judges should probably not rely on titles or captions . . . as anything but supporting evidence"); *Hamm*, 2021 WL 1669973, at *6 (warning against giving "undue weight to the title of the section 3145(c) at the expense of the plain meaning of the text").

Similarly, *Hamm* draws a negative inference from the Supreme Court's decision to promulgate an appellate rule, but not a trial rule, expressly citing the statute at issue here. But the Supreme Court has long said that "great caution is requisite in dealing with" the negative-implications canon. *Ford v. United States*, 273 U.S. 593, 612 (1927) (citation omitted); *see also* Scalia & Garner, *supra*, at 107 (highlighting that the canon "must be applied with great caution, since its application depends so much on context"). To overcome

5

the statutory definition of "judicial officer," one would expect a relatively strong signal from Congress. In this context, these canons do not cut it.

If anything, the negative-implications canon tugs the other way. *Hamm* draws a negative implication based on what is included or excluded from court-drafted federal rules. Far more relevant, however, is the negative implication drawn in the statute itself. Section 3145 includes three subsections. Under the first two subsections, judicial authority is limited to "the court having original jurisdiction over the offense." In other words, only specific district judges, not any judicial officer, have authority under those subsections. Subsection (c), in sharp contrast, includes no express limit; "judicial officer" is left unqualified. § 3145(c); *see also United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008) ("When Congress has altered the . . . definition of 'judicial officer' in other provisions within the Bail Reform Act— that is, when it has 'otherwise indicated' that the term should be read differently—it has done so clearly."). This negative implication is much more powerful than any implication drawn from the nonstatutory federal rules. The negative-implications canon carries the most weight when an omission occurs in the same statute. "When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023). Implications *within* the statute itself are far more probative than implications *between* the statute and other sources of law. *Cf.* Eskridge, *supra*, at 122 (describing the *in pari materia* canon as "of more limited utility" than a canon associated with the specific statute).

I also am skeptical of *Hamm*'s reliance on *non*statutory federal rules to overcome Congress's statutory definition. I do not disagree that statutes addressing the same subject

6

matter should be read in harmony with each other. But the Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure (typically) are not statutes. With few exceptions, the Supreme Court drafts them. 28 U.S.C. §§ 2071, 2072, 2074. These federal rules are of course binding unless they "exceed[ ] statutory authorization or Congress's rulemaking power." *Berk v. Choy*, No. 24-440, 2026 WL 135974, at *3 (U.S. Jan. 20, 2026) (citation omitted). But rules drafted by courts say little, if anything, about whether *Congress*, in enacting § 3145(c), departed from the statutory definition of "judicial officer."

It makes no difference that Congress retains authority to pass legislation to override court-drafted rules; that Congress has done so on occasion, *see, e.g.*, *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166–67 (2d Cir. 1999) (discussing a partial override by Congress of one rule); and that Congress did not do so for these rules. The same is true for regulations passed by administrative agencies. Congressional inaction on agency regulations is not a stamp of approval, because congressional silence typically is a poor signal of congressional intent. *See, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n.1 (1989) ("It is 'impossible to assert with any degree of assurance that congressional failure to act represents' affirmative congressional approval of the Court's [decision]." (citation omitted)); *Gamble v. United States*, 587 U.S. 678, 723 (2019) (Thomas, J., concurring) ("[C]ongressional silence . . . falls short of the bicameralism and presentment required by Article I and therefore is not a 'valid way for our elected representatives to express their collective judgment.'" (citation omitted)).

Silence within *enacted* legislation sometimes can be meaningful, as "[w]hen Congress includes particular language in one section of a statute but omits it from a neighbor," *Bittner*, 598 U.S. at 94. But the absence of any legislation at all will rarely, if ever, reveal Congress's

collective policy preferences. Legislation fails all the time (or is never introduced) for innumerable reasons having little to do with collective policy judgment. The member who controls the floor agenda dislikes the legislation. The relevant committee chair dislikes it. The floor leader or committee chair likes the idea but dislikes the member who proposed it. The policy idea is popular but is not a high priority in light of limited floor time. This Court cannot consider presumptions about congressional silence when those presumptions fail to "approximate reality" of how Congress operates. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 399 (2024). Because Congress neither legislatively enacted nor legislatively disavowed any court-drafted rule relevant here, those rules shine no light on whether Congress "indicated" that "judicial officer" carries a different meaning in § 3145(c) than it does in neighboring provisions.

Reading § 3145(c) in harmony with the rest of criminal law may in fact cut the other direction. Throughout criminal law, district courts typically are the first decisionmakers. Only rarely does an appellate court decide an issue of criminal law where a district court has not already made a ruling. *Hamm*'s interpretation would create this oddity. *See Meister*, 744 F.3d at 1239 (noting the oddity of an interpretation that would have appellate courts make determinations in the first instance and then have appeals from those determinations go to the same appellate courts). Indeed, the appellate rule on which *Hamm* relies expressly contemplates that district judges will make "release or detention" decisions in the first instance. That rule requires appellate judges to "promptly determine the appeal [from a release or detention order] on the basis of the papers, affidavits, and parts of the record that the parties present or the court requires," including "a transcript of the release proceedings." Fed. R. App. P. 9(a)(1)–(2). And by default "briefs need not be filed." Fed. R. App. P. 9(a)(2).

8

If § 3145(c) is read to prohibit district judges from addressing a defendant's assertion of "exceptional reasons," then appellate judges would be required to "promptly" decide the issue without the benefit of factual findings by the district court about whether the asserted reasons actually exist and without the "transcript of the release proceedings" that the appellate rule contemplates.

Having concluded that § 3145(c) directs district judges to assess whether there is an exception to mandatory detention, I determined that no exceptional reasons exist that would justify the defendant remaining on bond. ECF 62. But if *Hamm* is correct, then I should never have conducted that inquiry. And if I am correct, then other judges are failing to conduct a required inquiry. Appellate guidance on this issue would be welcome.

Dated this 11th day of February, 2026

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE